UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
SEP 2 2 2006
LEONARD GREEN, Clerk

No. 05-4199

UNITED STATES OF AMERICA,
    Plaintiff - Appellant,

v.

NURADIN M. ABDI,
    Defendant - Appellee.

Before: BOGGS, Chief Judge; COLE, Circuit Judge; WISEMAN, District Judge.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Leonard Green, Clerk

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0362p.06



# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

**FOR YOUR INFORMATION**

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

NURADIN M. ABDI,

*Defendant-Appellee.*

No. 05-4199

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00088—Algenon L. Marbley, District Judge.

Argued: July 19, 2006

Decided and Filed: September 22, 2006

Before: BOGGS, Chief Judge; COLE, Circuit Judge; WISEMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** John F. De Pue, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Mahir T. Sherif, San Diego, California, for Appellee. **ON BRIEF:** John F. De Pue, Sylvia T. Kaser, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Dana M. Peters, UNITED STATES ATTORNEY, Columbus, Ohio, for Appellant. Mahir T. Sherif, San Diego, California, for Appellee.

WISEMAN, D. J., delivered the opinion of the court, in which BOGGS, C. J., joined. COLE, J. (pp. 13-18), delivered a separate dissenting opinion.

---

## OPINION

---

THOMAS A. WISEMAN, JR., District Judge. In this interlocutory appeal, the United States (the "Government") appeals a decision of the district court suppressing statements made by Defendant-Appellee Nuradin M. Abdi ("Abdi" or "Defendant") after his warrantless arrest, but prior to his consultation with counsel on December 7, 2003, as well as the physical evidence recovered on the day of his arrest ("derivative evidence"). The district court concluded that the Government

---

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

had probable cause to support the administrative arrest for alleged violations of immigration laws as set forth in 8 U.S.C. § 1182(a)(3)(B)(iv). The court, nevertheless, held that the statements and derivative evidence should be suppressed because the objective facts known to the officers, taken together, did not support the Government's claim that Abdi was an escape risk, and that the arrest therefore violated 8 U.S.C. § 1357(a)(2) (authorizing warrantless arrests for immigration violations under specific circumstances).

In this appeal, the Government argues that even assuming it violated 8 U.S.C. § 1357(a)(2) by failing to obtain an administrative warrant prior to arresting Abdi, which the Government does not concede,[1] the arrest did not violate Abdi's constitutional rights under the Fourth Amendment. Thus, the Government contends that the district court acted improperly by imposing a suppression remedy for a purely statutory violation. Abdi, on the other hand, in urging this court to affirm the district court's suppression of the statements and derivative evidence, argues that the district court was correct in applying the suppression remedy for the warrantless arrest because it violated 8 U.S.C. § 1357(a)(2) and further, that the Government lacked probable cause to arrest him for a felony as required by the Fourth Amendment.[2]

Because we find that suppression is not an appropriate remedy for violation of the administrative warrant requirement of 8 U.S.C. § 1357(a)(2), and that Abdi's Fourth Amendment rights were not violated by his public warrantless arrest based on probable cause, we conclude that the district court erred when it suppressed Abdi's statements and the derivative evidence. We therefore REVERSE the district court's suppression of Abdi's statements made prior to December 7, 2003 and derivative evidence and REMAND for further proceedings consistent with this opinion.

## I. FACTS

According to the testimony presented at the suppression hearing and the findings of the district court, the essential background facts are as follows. Abdi first came to the Government's attention in March 2003. At that time, members of the Joint Terrorism Task Force (JTTF)[3] learned from Iyman Faris, a known and now convicted member of the Al Qaeda organization who was

---

[1] The Government argues that it satisfied the exception to the administrative warrant requirement under 8 U.S.C. § 1357(a)(2) because Abdi's arrest was based on probable cause and a well-founded belief that Abdi presented an "escape risk" as contemplated by the statute, and that the district court erred in finding that the Abdi was not an "escape risk" as contemplated by the exception to the warrant requirement. (Appellant's Br. at 25-27.) Because we find that the suppression remedy is not mandated by the terms of 8 U.S.C. § 1357(a)(2) and the district court erred in applying the exclusionary rule to the Government's violation of 8 U.S.C. § 1357(a)(2), we need not consider whether the district court erred in its factual determination that Abdi was not an "escape risk" or in rejecting the Government's argument that this exception to the administrative warrant requirement was satisfied.

[2] Abdi also contends that, to the extent the district court admitted the statements he made following the involvement of an attorney on his behalf, it misapplied the factors outlined in *Brown v. Illinois*, 422 U.S. 590 (1975), and that the portion of the decision denying his request for suppression should be reversed. (Appellee's Br. at 12.) Although 18 U.S.C. § 3731 permits the Government to take an immediate appeal from an order granting a motion to suppress evidence, the statute provides no avenue for the defendant to cross appeal orders favorable to the Government. Therefore, this issue is not properly presented to this court and will only be considered if Abdi is ultimately convicted of the offenses charged and appeals that conviction.

[3] JTTF is a multi-agency organization consisting of law enforcement authorities from different federal agencies, as well as state and local authorities. Its purpose is to collaborate in combating terrorism through pooling resources and sharing information, and to identify, locate and apprehend individuals who pose a threat to national security by all means available, whether it be through administrative arrests, or state or federal criminal charges. (Joint Appendix ("JA") 170; JA 211.)

cooperating with the Government's investigation,[4] that he knew Abdi, had met with him a couple of times, and that during one of their meetings between January and March 2003 in the presence of Faris and another man, Abdi had indicated a desire to "shoot up" a Columbus shopping mall with an AK-47. (Joint Appendix ("JA") 76-78, 329.)

On April 3, 2003, the FBI interviewed Abdi at his cell phone store about his relationship with Faris and whether he had made the alleged statement. Abdi admitted knowing Faris but denied making the statement Faris attributed to him. (JA 332.) According to Abdi, the agents requested and were granted permission to search his apartment but did not find any weapons. According to the Government, an examination of Faris' computer sometime in April or May of 2003 revealed that in July 2001 Abdi had sent e-mail correspondence to Faris suggesting he review several websites where he could purchase surveillance equipment, such as night-vision goggles, small cameras, and listening devices. Based on this information and the fact that other information Faris had furnished had proven reliable, the agents took Abdi's alleged threat seriously and opened a formal investigation of Abdi on June 5, 2003. (JA 450-51.) Later that month, law enforcement officers interviewed Mehmet Aydinbelge, another informant, who confirmed the relationship between Faris, Abdi and the third man allegedly present when Abdi made the threats, explaining that the three often met after prayer service at their mosque.

After opening the formal investigation, the FBI began tracking Abdi's phone calls. According to the Government, between June and November 2003, Abdi placed calls to approximately forty different phone numbers the FBI associated with terrorism-related activities.[5] The FBI, which was at this point working in tandem with Immigration and Customs Enforcement ("ICE"), concluded that Abdi was a national security threat and should be arrested. (JA 171.) Although the FBI was the lead investigative agency, the two agencies, officially linked by the JTTF, decided that because Abdi's actions constituted a violation of immigration law as set forth in 8 U.S.C. § 1182(a)(3)B)(iv)(II), an administrative arrest by ICE pursuant to 8 U.S.C. § 1357(a)(2) would be the most expedient way to disrupt the terrorism threat. (JA 453-54.)

Any "signatory officer" within ICE is ordinarily empowered to issue an administrative arrest warrant for violations of immigration law. (JA 173.) *See* 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.5(c). In order to obtain a standard administrative arrest warrant immigration officers draft and present a charging document known as a "Notice to Appear" ("NTA"), which sets forth the factual and legal basis for the immigration arrest, along with any supporting documents to the signatory officer for review. (JA 177, 183.) However, in cases where the basis for the arrest is a threat to national security, internal ICE policy and procedure require that the national security law division of ICE conduct a probable cause review for legal sufficiency purposes prior to the issuance of either an NTA or an administrative arrest warrant. (JA 175, 179.) In order to facilitate the probable cause review, ICE agents must submit an affidavit or other document, such as a national security declaration, setting forth the factual basis for an administrative arrest based on national security concerns. (JA 173.)

Beginning in October 2003, FBI Senior Supervisory Agent ("SSA") James Turgal, working with information provided by Special Agent ("SA") Flowers, began to draft the necessary national

---

[4] According to the Government, at the same time he was meeting with Abdi, Faris was operationally active for Khalid Sheikh Mohammed, the so-called mastermind of the 9/11 attacks. (JA 57.) Faris has since been convicted of materially supporting Al Qaeda, conspiring to provide material support based on his role as an Al Qaeda operative and his role in selecting the Brooklyn Bridge as an active target for Al Qaeda, and engaging in overt acts in furtherance of those plans. (JA 76-77.)

[5] Special Agent ("SA") Flowers testified that these forty numbers were almost all associated with different terrorism suspects.

security declaration (the "Turgal Declaration") setting forth the investigative information establishing the probable cause required for an administrative warrant under 8 U.S.C. § 1357(a)(2). According to SSA Turgal, probable cause was based on information that Abdi "was associated with a known terrorist organization, that he made a threat to engage in a terrorist act against the United States, and that he incited and/or solicited others to engage in that act." (JA 74, 142.) The Turgal Declaration was completed shortly after October 28, 2003[6] and thereafter submitted to the FBI Headquarter's General Counsel's Office. It then passed to the ICE General Counsel, who was to make the decision on whether to issue an administrative warrant.[7]

FBI and ICE spent part of October and most of November determining what portion of the Turgal Declaration, a five-page document, was classified, unclassified, declassified, or about to be declassified. (JA 181-83.) The original plan was to arrest Abdi on Thanksgiving day, but because the agencies were unable to resolve the dispute by November 28, 2003, the day after Thanksgiving, and because the agents purportedly feared that Abdi would carry out his alleged plan on the busiest shopping day of the year, the agents arrested Abdi without a warrant of any kind.[8] (JA 346-47.)

On Friday, November 28, 2003 at approximately 6:00 a.m., two ICE agents, accompanied by two FBI agents, arrested Abdi as he was leaving his home on his way to morning prayer. After one of the ICE agents read Abdi his *Miranda* rights, he consented to a search of his residence, vehicle, and business. (JA 186-87.) The agents then took Abdi to the Columbus FBI office where he signed a *Miranda* waiver. Abdi was interviewed by FBI agents for approximately forty-five minutes, during which he admitted knowing Faris but once again denied making statements to suggest he was going to attack a shopping mall. (JA 351-54.) Later that same day, Abdi was transported to Kenton County Detention Center with instructions that he be denied visitation and telephone communication privileges, except communications with defense counsel. After his first night in Kenton County Detention Center, Abdi was isolated from the general prison population and prohibited outside contact.[9] Abdi remained in custody there until December 15, 2003.

According to ICE agents, Abdi was not interviewed again until November 30, 2003. (JA 357.) On that date, the agents took Abdi to the ICE Office in Cincinnati, Ohio where he again signed a *Miranda* waiver. ICE's Resident Agent in Charge ("RAC") Richard Wilkens and ICE Special Agent Robert Medellin then questioned Abdi from 11:00 a.m. until 4:00 p.m., with intermittent

---

[6] On or about October 1, 2003, SA Flowers provided SSA Turgal with a memorandum containing information to support probable cause. On November 1, 2003, SA Flowers sent SSA Turgal a revised memorandum that included the recently completed analysis of Defendant's cell phone records.

[7] Typically, the agency that is to make the arrest makes the decision on whether a warrant is required. Specifically, if the FBI is to make a Title 18 arrest, then the FBI makes the decision about whether or not a warrant is required, while if it is a Title 8 arrest, then ICE makes the decision. (JA 148.) According to SSA Turgal, at the time he completed the Turgal Declaration he had no idea who would be deciding whether to get a warrant to arrest Abdi and, although he determined there was probable cause to believe Abdi was a national security threat, he did not make any recommendations as to whether the arresting agency needed to get a warrant. (JA 142-48.)

[8] SSA Turgal testified that he had reviewed all of the available information when drafting the Turgal Declaration and made the legal determination that the FBI and ICE had probable cause to believe Abdi was engaging in terrorist activity and was a national security threat. (JA 112, 123.) In Turgal's opinion, an independent magistrate would have issued a warrant for Abdi's arrest (JA 112), but because the agencies decided it should be an immigration arrest the decision to seek a warrant was up to the ICE agents. (JA 139, 142.)

[9] On his first night in Kenton County Detention Center, Abdi made ten collect phone calls, six of which were to the unindicted co-conspirator that Faris identified as Abdi's associate. The charges for the first five phone calls were refused, and Abdi hung up before the sixth phone call was completed. Abdi made four phone calls to his family, but did not reach anyone. (JA 386-388.)

breaks. (JA 21-22.) Although the FBI Special Agents did not participate in the interview, they remained outside the interview room and listened to the interrogation. Approximately fifteen minutes into the interview, Abdi admitted that he falsified his asylum application in its entirety.

At approximately 1:35 p.m., the two FBI Special Agents, believing that they had heard everything that was of interest to them, left the building for lunch. (JA 359-60.) When they returned, sometime around 4:00 p.m., ICE agents had concluded their interview of Abdi. ICE agents informed SA Flowers and SA Corbin that Abdi had admitted to taking part in a conversation with Faris and another man in which Abdi suggested killing Columbus mall-goers with a bomb, not an AK-47 as originally thought. (JA 365.) Due to the gravity of Abdi's statements, ICE agents had their clerical assistant begin typing a transcript of the agents' notes of the interview. Between 5:00 p.m. and 10:00 p.m. the ICE agents, Abdi and the clerical assistant reviewed each page of the transcript and made any necessary corrections. (JA 367.) At approximately 10:00 p.m., Abdi signed each page of the transcribed notes, verifying his statements were true and accurate. (JA 367-68, 530-46.)

Thereafter, Abdi agreed to be interviewed by SA Flowers and SA Corbin concerning the "plots" he had discussed during the ICE interview.[10] (JA 367-68.) Abdi signed a third *Miranda* waiver at 10:40 p.m. and FBI agents interviewed Abdi from 10:45 p.m. until 12:45 a.m.. After the interview Abdi was transported back to Kenton County Detention Center. RAC Wilkens and SA Flowers testified that at no point during the day did Abdi ask to see his family or request counsel. (JA 22.)

The next day, December 1, 2003, Abdi signed yet another *Miranda* waiver and was again interrogated. At 5:35 p.m., nearly eighty-four hours after his initial arrest, SA Medellin served Abdi a Notice of Intent to Terminate Asylum Status (JA 555), a Notice to Appear at Removal Proceedings (JA 548-51), and an administrative warrant (JA 552). Despite the extensive hours spent on the Turgal Declaration, these documents were grounded almost exclusively in the previous day's admission that Abdi had falsified his asylum application, only peripherally mentioning national security concerns.[11]

Agents questioned Abdi again on December 2, 3, and 5, 2003, each time presenting Abdi with *Miranda* waivers that he signed. During the interrogation on December 5, 2003, two different attorneys, both claiming to represent Defendant, contacted SA Medellin. When asked if he wanted to see either attorney, Abdi stated that neither attorney represented him and signed a waiver to that effect. Agents *Mirandized* and questioned Abdi on December 6 and again on December 7, 2003, when he agreed to take a polygraph test. On December 7, 2003 during the polygraph test, Attorney Douglas Weigle arrived at the interrogation site and claimed that he represented Abdi. At this point, Abdi accepted counsel but, according to SA Flowers, opted to finish his polygraph before meeting with counsel.

Abdi met with Mr. Weigle on December 7, 2003 and at some point afterward, informed the agents that he would continue his *Miranda* waivers. Abdi, now accompanied by Mr. Weigle, who indicated to the agents that he represented Abdi on both immigration and criminal matters, submitted to four more interviews. During these subsequent interviews, which occurred on December 10,

---

[10] Between the hours of 4:00 p.m. and 10:00 p.m., Defendant was in a holding cell.

[11] Specifically, the Notice to Appear states, inter alia, that Defendant's asylum status should be terminated because "you procured that status by fraud, to wit, you admitted in a sworn affidavit that you filed an application for asylum containing false information" and because "there are reasonable grounds for regarding you to be a danger to the security of the United States." (JA 550.)

2003, January 6, 2004, January 15, 2004, and February 17, 2004, Mr. Weigle advised Abdi that he should continue his cooperation with investigators. In each of these sessions, Abdi signed a separate *Miranda* waiver and repeated much of the same information he had previously divulged to the agents. On the basis of these statements and other evidence developed by investigators, Abdi was indicted on June 10, 2004.

## II. PROCEDURAL HISTORY

On June 10, 2004, a grand jury in the Southern District of Ohio returned a four-count indictment against Abdi for various related criminal matters. Count I alleged that Abdi conspired to provide material support to terrorists, knowing and intending that such support was to be used to kill, kidnap, maim, and injure persons, and to damage and destroy property in a foreign country, in violation of 18 U.S.C. § 2339A. Count 2 alleged that Abdi conspired to provide material support and resources to a foreign terrorist organization – Al Qaeda – in violation of 18 U.S.C. § 2339B. Counts 3 and 4 alleged that Abdi acquired, possessed, or employed false travel documents in order to facilitate an act of intentional terrorism, in violation of 18 U.S.C. § 1546(a).

On May 18, 2005, Abdi filed a motion styled as a Motion to Suppress All Statements Allegedly Made By Defendant and All Evidence Seized in Violation of the Fourth Amendment. On August 25 and 26, 2005, the district court conducted an evidentiary hearing on the motions. At the hearing the district court concluded that the Government had sufficient evidence to establish probable cause to arrest Abdi as a national security threat as early as September, when the Turgal Declaration was first drafted. (JA 97, 101-02.) Accordingly, the district court focused its inquiry on why, if the Government had probable cause months, weeks, or days before the November arrest and could have gotten a warrant with the unclassified information provided in the Turgal Declaration, the agencies chose not to get a warrant and instead effectuated a warrantless arrest. (JA 104, 112, 480.) Following the presentation of evidence, the district court characterized the question before it as whether the Government improperly disregarded the "Constitution[al] warrant requirement and the jurisprudence thereunder." (JA 491-92.)

Based on the evidence presented, the district court agreed that the Government had probable cause to believe that Abdi was a national security risk, as defined by 8 U.S.C. § 1182, and therefore, had probable cause to execute an administrative arrest. *See* 8 U.S.C. § 1182(a)(3)(B)(iv)(II) (making those aliens who "prepare or plan a terrorist activity" inadmissible to the United States). However, after a review of "the objective facts within the knowledge of the [arresting] agents," the district court determined that the Government failed to demonstrate that Abdi was "likely to escape" on the day he was arrested or that exigent circumstances required an immediate arrest without a warrant. (JA 28-31.) Viewing the procurement of a warrant as a constitutional requirement whether "it is an administrative warrant or whether it is a criminal matter" (JA 494), the court characterized the Government's failure to do so prior to Abdi's arrest as an "insurmountable issue." (JA 500.) Therefore, the district court found that Abdi's arrest by ICE agents without an administrative warrant violated 8 U.S.C. § 1357(a)(2), and the subsequent confessions were tainted unless the Government could "demonstrate not only that the confession was voluntary, but also that a sufficient break in the events occurred to undermine the inference that the confession was caused by the Fourth Amendment violation." (JA 33 (*quoting United States v. Crowder*, 62.F.3d 782, 786 (6th Cir. 2003)).)

After a review of the facts, the district court found that the taint of the unlawful arrest sufficiently dissipated after Abdi met with counsel on December 7, 2003. Accordingly, on September 12, 2005, the district court issued an order and opinion granting in part and denying in part Abdi's motion to suppress, holding that all statements made by Abdi to law enforcement authorities after his arrest on November 28 and prior to meeting with his attorney on December 7, 2003, as well as the derivative evidence, were suppressed. (JA 18.)

On September 15, 2005, the district court issued a supplemental opinion and order clarifying its September 12 order, specifically stating that the court was suppressing the various items of physical evidence obtained on the day of Abdi's arrest in connection with consent searches of his home, vehicle, and business, as well as an item obtained through an inventory of the contents of his wallet, on the same basis as it suppressed his statements. (JA 42-43.) The court also clarified that evidence which was seized on the date of his arrest, but not searched until later pursuant to a federal warrant, was not suppressed in light of the warrant obtained after his arrest. (JA 43.) The Government's timely appeal followed.

### III. ANALYSIS

#### A. Standard of Review

In reviewing a ruling concerning a motion to suppress, this court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Hammond*, 351 F.3d 765, 770 (6th Cir. 2003). Whether the police had probable cause to arrest is a question of law and is therefore reviewed *de novo*. *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004). A district court's factual finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Oliver*, 397 F.3d 369, 374 (6th Cir. 2005) (internal quotations omitted). However, this court gives considerable deference to the district court's credibility determinations. *Id.* at 374.

#### B. Suppression For A Statutory Violation

We turn first to the Government's claim that even if the district court was correct in concluding that the Government violated 8 U.S.C. § 1357(a)(2) when it arrested Abdi without a warrant, there is no basis for application of the exclusionary rule. The Government contends that the warrantless public arrest was based on probable cause, and that absent a specific reference in the statute to a suppression remedy, the district court's application of the exclusionary rule was not appropriate. Abdi asserts that the source of the Government's authority to make a warrantless arrest for immigration violations is contained in the statute and, that by violating the statute, the Government arrested him without legal authority. Accordingly, Abdi contends that the suppression sanction was warranted. We therefore consider whether the Government's violation of 8 U.S.C. § 1357(a)(2) alone required the suppression of Abdi's statements and the derivative evidence.

The exclusionary rule is a judicially fashioned remedy aimed at deterring constitutional violations, the application of which is appropriate when the Constitution or a statute requires it. *Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669, 2680 (2006); *United States v. Caceres*, 440 U.S. 741, 754-55 (1979); *United States v. Giordano*, 416 U.S. 505, 524 (1974) (in the absence of Fourth Amendment violation, suppression remedy depends upon provisions of the statute); *United States v. Ware*, 161 F.3d 414, 424-25 (6th Cir. 1998). It is well-settled that "[s]uppression of evidence . . . has always been our last resort, not our first impulse," and the exclusionary rule is only applicable "where its remedial objectives are thought most efficaciously served." *Hudson v. Michigan*, 126 S. Ct. 2159, 2163 (2006) (citation omitted).

Although exclusion is the proper remedy for some violations of the Fourth Amendment, there is no exclusionary rule generally applicable to statutory violations. Rather, the exclusionary rule is an appropriate sanction for a statutory violation only where the statute specifically provides for suppression as a remedy or the statutory violation implicates underlying constitutional rights such as the right to be free from unreasonable search and seizure. *See Sanchez-Llamas*, 126 S. Ct. at 2679-682 (finding that suppression is not an appropriate remedy for violation of Article 36 of the Vienna Convention); *United States v. Donovan*, 429 U.S. 413, 432 n.22 (1977) (denying exclusion for violation of wiretapping statute, 18 U.S.C. § 2518); *Ware*, 161 F.3d at 424 (6th Cir. 1998)

("statutory violations, absent underlying constitutional violations, are generally insufficient to justify imposition of the exclusionary rule"); *United States v. Meriwether*, 917 F.2d 955, 960 (6th Cir. 1990) (holding that government violations of the Electronic Communications Privacy Act do not warrant suppression of evidence).

The Supreme Court's recent decision in *Sanchez-Llamas*, rejecting the application of the exclusionary rule to violations of the Vienna Convention, supports our holding that application of the judicially created exclusionary rule to a statutory or treaty-based violation is only appropriate in cases where: (1) the evidence arose directly out of the statutory violation and the statute or treaty itself mandates suppression, or (2) the violation implicates important Fourth or Fifth Amendment interests. 126 S.Ct. at 2680-81. *See also United States v. Chaparro-Alcantara*, 226 F.3d 616, 621-22 (7th Cir. 2000) (finding that "the rights protected by the Vienna Convention are equivalent to the rights protected by a statute because treatises and statutes have been held by the Supreme Court to be 'on the same footing' with each other under the Constitution" and holding "[w]e cannot attach the judicially created remedy of suppression to the Vienna Convention without some explicit support from the treaty itself"). Accordingly, to hold that suppression is the necessary consequence for failure to obtain an administrative warrant or satisfy the exceptions to the warrant requirement under 8 U.S.C. § 1357(a)(2), we must find the suppression remedy in the text of the statute.

Immigration agents are permitted, by statute, to make warrantless arrests under certain circumstances.[12] However, it is clear that nothing in the text of 8 U.S.C. § 1357 provides an independent statutory remedy of suppression for failing to obtain an administrative warrant. Accordingly, we find that the district court erred in reading such a remedy into the statute. *Meriwether*, 917 F.2d at 960; *Chapparo-Alcantarta*, 226 F.3d at 622. Because the statute authorizing ICE agents to arrest persons for immigration violations, like the Vienna Convention, by its terms, does not require the application of the exclusionary rule to violations of the statute, we hold that the district court erred in suppressing Abdi's statements and the derivative evidence based on the Government's failure to comply with the statute.[13]

### C. Suppression Under the Fourth Amendment

Having determined that the district court erred when it applied an exclusionary remedy for the Government's violation of 8 U.S.C. § 1357(a)(2), we must also consider whether Abdi's warrantless arrest was reasonable under the Fourth Amendment. We begin our Fourth Amendment analysis with the Government's argument that we should reverse the district court's suppression of

---

[12] As provided by 8 U.S.C. § 1357(a)(2):

(a)     Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant –

\*\*\*

(2)     to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . .

8 U.S.C. § 1357(a)(2)

[13] Although we hold that application of the exclusionary rule is not appropriate for the Government's statutory violation of 8 U.S.C. § 1357 in this case, we emphasize that this decision is based on the specific facts before the court. Specifically, we note that the outcome would be different if the Government's warrantless arrest had not complied with the Fourth Amendment, as discussed in Section III.C. of this opinion.

Abdi's statements and the derivative evidence, regardless of whether the arrest violated 8 U.S.C. § 1357(a)(2), because the arrest was conducted in a public place and supported by probable cause, and therefore the Government was not required to obtain a warrant to comply with the Fourth Amendment.[14]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999) (internal citation omitted). However, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed. *United States v. Watson*, 423 U.S. 411, 417-24 (1976). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable . . . officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)), *quoted in United States v. Romero*, 452 F.3d 610, 615-16 (6th Cir. 2006). The issue in this case is whether, based on the information known at the time of the arrest, a reasonable JTTF agent could conclude that there was probable cause to believe that Abdi committed the crime of providing material support or resources to designated foreign terrorist organizations, a felony under 18 U.S.C. § 2339B.

The district court found that the Government had probable cause to execute an administrative arrest based on the information provided by the FBI and set forth in the Turgal Declaration. Specifically, the district court found the facts establishing probable cause included: (1) the statement by Faris, a self-confessed Al Qaeda operative, that Abdi told him he intended to "shoot up a mall" with an automatic weapon; (2) ascertainment of information from Faris' computer indicating Abdi had sent him e-mails in 2001 about surveillance equipment that could be purchased; (3) independent corroboration that Abdi had relationships with known terrorists; and (4) telephone activity from Abdi's phone number to approximately forty other numbers connected to FBI terrorism cases. (JA 101-02.) The briefs do not challenge the district court's finding that, by the time Abdi was arrested, the Government had probable cause to believe he was a national security risk as defined by 8 U.S.C. § 1182. (JA 28, 74, 101-02, 171, 216, 480, 487.) Rather, Abdi contends that the Government did not have probable cause to believe he was a felon and that the arrest therefore violated his rights under the Fourth Amendment.[15] Abdi's argument misconstrues the law.

"An arresting officer's state of mind, except for the facts that he knows, is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153, citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996). Thus, despite Abdi's argument to the contrary, it is constitutionally irrelevant that the ICE officers' reason for arresting him was their belief that he was

---

[14] During the suppression hearing, the district court found that the Government had probable cause to believe Abdi was a national security threat. *See* JA 171, 440, 481. Accordingly, the parties focused their arguments on whether the Government violated 8 U.S.C. § 1357(a)(2) in effecting the warrantless arrest. Neither the parties, nor the district court, made a distinction between probable cause under the immigration statute and probable cause under the Fourth Amendment.

[15] Although counsel for Abdi initially argued that "the government had no probable cause under the laws of these United States to arrest Nuradin Abdi on the 28th of November 2003," (JA 71), based on the district court's questions during the hearing, counsel decided not to specifically address the Fourth Amendment probable cause issue. (JA 496.) In his Reply brief filed with this court, Abdi again raises the argument that the Government did not have probable cause to arrest Abdi under the Fourth Amendment because the Government had no reason to believe he was engaged in a felony or otherwise committing a crime in public. (Appellee's Br. at 3-4.)

in violation of immigration laws, and not that he was a felon. There is no question that, at the time of Abdi's arrest, the arresting officers possessed all of the information contained in the Turgal Declaration, and that the information was sufficient to establish probable cause to believe that Abdi was a national security risk. Specifically, the Government alleges that at the time of his arrest Abdi was barred from admission to the United States on three grounds:

(1) membership in a foreign terrorist organization in violation of 8 U.S.C. § 1182(a)(3)(B)(i)(V);

(2) engaging in terrorist activity by threatening the use of a firearm in violation of 8 U.S.C. § 1182(a)(3)(B)(i)(I) and 8 U.S.C. § 1182(a)(3)(B)(iii)(V) and (VI); and

(3) planning, inciting and soliciting terrorist activity with intent to cause death or serious bodily harm in violation of 8 U.S.C. § 1182(a)(3)(B)(iv)(I)-(III) and (V).

As the Government points out, virtually the same conduct is embraced by 18 U.S.C. § 2339B, one of the criminal statutes under which Abdi was subsequently indicted. Specifically, 18 U.S.C. § 2339B makes it a crime to provide material support or resources to designated terrorist organizations and provides in pertinent part:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any terms of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism
> . . . .

18 U.S.C. § 2339B(a)(1). Based on a review of the immigration statute, which constituted the predicate for Abdi's arrest, and 18 U.S.C. § 2339B, under which Abdi was charged, we believe that there is substantial identity between the two statutes and agree with the district court that the Turgal Declaration, setting out the Government's case, "reeks of probable cause."[16] (JA 487.)

As the Supreme Court has repeatedly explained, the "[s]ubjective intent of the arresting officer, *however* it is determined . . . , is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Devenpeck*, 543 U.S. at 154-55; *see Whren*, 517 U.S. at 813 (constitutional reasonableness of traffic stop does not depend on actual motivations of the individual officers involved). Therefore, all that matters is whether the arresting officers possessed knowledge of evidence sufficient to establish probable cause that Abdi was engaged in the commission of a felony at the time of his public warrantless arrest. *Payton v. New York*, 445 U.S. 573, 598 (1980) (distinguishing between warrantless arrests in homes and in public); *Watson*, 423 U.S. at 423-24 (declining to "transform this

---

[16] The district court's opinion did not specifically cite to the Fourth Amendment in finding that the Government had probable cause to arrest Abdi for immigration violations under 8 U.S.C. § 1182(a)(3)(B)(iv), but based on the record before this court and the district court's analysis of Abdi's Motion to Suppress, wherein it found that over the months prior to the arrest, "[a]s the government amassed more evidence, the strength of its probable cause case did not weaken; instead, it grew stronger . . . ," it is clear that the issue of probable cause as contemplated by the Fourth Amendment was squarely before the district court. (JA 32.)

judicial preference [for a warrant] into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause . . . . ").

The Supreme Court has made it clear that there is no requirement "that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest . . . ." *Devenpeck*, 543 U.S. at 153. Yet, the substantial identity between the immigration statute and criminal statute in this case further supports our holding that the district court considered the facts before it and found, albeit not expressly in its opinion, that the Government had probable cause to believe that Abdi was a member of a terrorist organization, had made a threat to engage in an act against the United States, and had solicited others to engage in that act. (JA 95-102.) Because we find that the district court properly concluded that Abdi's arrest was based on probable cause that he was in violation of immigration laws set forth in 8 U.S.C. § 1182(a)(3)(B)(iv), which also constitute felony offenses under 18 U.S.C. § 2339B,[17] and the arrest was made in public,[18] we conclude that no violation of the Fourth Amendment resulted from the warrantless arrest. *Payton*, 445 U.S. 590-92; *Watson*, 432 U.S. at 423. Therefore, we hold that Abdi's constitutional rights were not implicated by his warrantless arrest and application of the exclusionary rule is inappropriate. Accordingly, the district court erred in granting Abdi's motion to suppress based on the Fourth Amendment.[19]

---

[17] The dissent contends that "the evidence underlying the probable-cause determination for the immigration arrest *may have* sufficed for probable cause under the criminal provision, but the Government, by not raising this argument until its reply brief in this Court, has not afforded Abdi his right to challenge that evidence in district court or even to argue that point to this Court. Waiver is therefore appropriate." (Dissent at 17.) However, this contention ignores the fact that, as discussed above, the Turgal Declaration contained the information necessary "[t]o determine whether or not there was probable cause that Nuradin Abdi was associated with a known terrorist organization, that he made a threat to engage in a terrorist act against the United States, and that he incited and/or solicited others to engage in that act" (JA 74), conduct embraced by both the immigration and criminal statute, and ignores the fact that the district court relied on this information in finding that the Government had probable cause to arrest Abdi. (JA 28-29.) Moreover, despite the dissent's assertion to the contrary, Abdi had several opportunities to argue that the Government's probable cause determination under the immigration statute was not sufficient to establish probable cause to believe Abdi was in violation of the criminal statute. (JA 71, 496.) *See United States v. Shameizadeh*, 41 F.3d 266, 267 ("[A] defendant may present, as part of his brief in the government's appeal, any arguments he may have advanced in the district court which would provide an alternative basis for affirming the order of suppression.") (internal citations omitted). In fact, during oral argument before this court, Abdi's attorney was asked to explain how probable cause under the immigration statute was not the equivalent of probable cause under the criminal statute, but like the dissent, he was unable to articulate any difference between the two statutes.

[18] Abdi was arrested shortly before 6:00 a.m. on Friday, November 28, 2003 as "[h]e was coming out" of his apartment building on his way to morning prayer. (JA 347-48.) The dissent apparently contends that this fact alone is not enough to establish that the arrest was in "public." (Dissent at 17.) According to the dissent, "because the Government chose not to raise its new argument [that the arrest was a public arrest based on probable cause] in the district court, there was no development of the record related to whether Abdi was in the curtilage of his home when arrested." (Dissent at 18.) We note that by the very nature of Abdi's motion to suppress, the facts surrounding Abdi's arrest were at issue during the suppression hearing and both parties had an interest in presenting evidence and questioning witnesses about the specific circumstances of the arrest and the actions of the officers on the day of the arrest. From our review of the record it seems clear that despite Abdi's contention that the arrest violated the Fourth Amendment, "there was no development of evidence" as to whether or not Abdi's arrest was in public because the parties and the court recognized that Abdi's arrest made outside of his apartment building was a public arrest. In fact, Abdi's Reply brief specifically acknowledged that "FBI and ICE agents arrest[ed] Abdi outside his home." *See Appellee's Br.* at 2, 3-4.

[19] The dissent argues that the Government failed to adequately raise the issue of probable cause under the Fourth Amendment as an alternative basis for Abdi's arrest in the district court and that we should therefore treat as waived the Government's argument on appeal that the arresting officers had probable cause to believe Abdi had committed a criminal offense. (Dissent at 4-5.) The dissent contends that under the Supreme Court's decisions in *Steagald v. United States*, 451 U.S. 204 (1981), and *Giordenello v. United States*, 357 U.S. 480, 488 (1958), we may not rely on the Government's argument that it had probable cause to believe Abdi had committed a criminal offense as a basis for reversing the district court's order. (Dissent at 5, 8.) We disagree.

## IV. CONCLUSION

In sum, we find that 8 U.S.C. § 1357(a)(2) does not provide an independent statutory remedy for suppression based on violations of the administrative warrant requirement and that the Government's warrantless public arrest of Abdi based on probable cause did not violate or implicate Abdi's Fourth Amendment rights. Therefore, we hold that the district court erred when it applied the exclusionary rule and suppressed Abdi's statements and the derivative evidence. For these reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

We note first that the issue of waiver was not presented by either party in their briefs or arguments before this court. Rather, as the dissent points out, the issue of waiver was raised for the first time in questions by this court during oral argument and the discussion was limited to counsel for Abdi agreeing with the suggestion that the Government had indeed waived its argument that there was independent probable cause under the Fourth Amendment to arrest Abdi. (Dissent at 16, n. 2.) Moreover, the dissent's reliance on *Steagald* and *Giordenello* is misplaced. First, both *Steagald* and *Giordenello* were in a completely different procedural posture than the present case. In *Steagald* and *Giordenello*, the Government's "waived" argument was not presented before or even during trial, but was raised for the first time in the Supreme Court after the petitioner was tried and convicted. *Steagald*, 451 U.S. at 207; *Giordenello*, 357 U.S. at 487-88. In both cases, the Court pointed out that if it were to allow the Government to raise new arguments at this stage in the litigation, it would have to send the case back to the district court for a hearing and further factual development despite the fact that the verdict and judgment were already entered. In the case at bar the Government's argument that there was independent probable cause under the Fourth Amendment to arrest Abdi is expressly presented to this court in an interlocutory appeal prior to the commencement of trial. Therefore, unlike the situation in *Steagald* and *Giordenello*, it cannot be said that Abdi does not have an opportunity to respond to the underlying allegations and adduce his own evidence to rebut these contentions during trial and on appeal if he is convicted.

Second, in both *Steagald* and *Giordenello*, the Court did not allow the Government to present a *new* argument at the Supreme Court level based on the fact that the Government's arguments before the district *and* circuit court were either *very different* or in *direct conflict* with the Government's arguments before the Supreme Court. Although the Government in the present case relied heavily on the argument that the warrantless arrest complied with the administrative statute and therefore did not require a warrant, it cannot be said that the Government's "new" argument presented to this court in its interlocutory appeal is so different that Abdi "had no reason to cross-examine" witnesses or "adduce evidence of his own to rebut the contention." *Giordenello*, 357 U.S. at 488. Moreover, unlike the situation in *Steagald*, where the Government's argument raised before the Supreme Court was not only new, but actually in direct contradiction to its contention before the lower courts, *Steagald*, 451 U.S. at 208-11, the Government's argument that it had Fourth Amendment probable cause to arrest Abdi does not expressly conflict with its assertions before the district court or with the district court's findings in its opinion. Unlike *Steagald* and *Giordenello*, this is not a case where the parties and the court had no reason to consider the issue now being presented by the Government, nor is there a need for further factual development to consider the issue on appeal. The record in the present case is fully developed concerning the question of Fourth Amendment probable cause and, accordingly, the Court's main concern in *Steagald* and *Giordenello* -- that the Government's new argument presented a question of fact that was not considered or developed by either party or otherwise in the record below -- is not at issue in the present case. Consequently, we disagree with the dissent's application of *Giordenello* and *Steagald* to the instant case and the dissent's conclusion that the Government has waived its argument that the arresting officers had probable cause to believe that Abdi had committed a felony under the Fourth Amendment.

---

# DISSENT

---

R. GUY COLE, JR., Circuit Judge, dissenting. Before the district court, the Government argued that its agents had satisfied the requirements of 8 U.S.C. § 1357(a)(2) and thus were not required to obtain a warrant for Abdi's arrest. The Government relied exclusively on that argument; it did not argue that there was independent probable cause under the Fourth Amendment to arrest Abdi. Because this second argument is therefore waived for the purposes of this appeal, I respectfully dissent.

## I. BACKGROUND

The discussion of waiver that follows requires some additional background on the proceedings in the court below and on appeal.

### A. District Court Proceedings

In the district court, Abdi moved to suppress evidence based on his allegedly illegal arrest. He contended that the warrantless arrest violated the statutory administrative-warrant requirement under 8 U.S.C. § 1357(a)(2). That statute allows warrantless arrest when two conditions are met: (1) probable cause to believe the alien has violated immigration law, and (2) probable cause to believe the alien is an escape risk. Abdi argued that neither condition existed. Abdi then claimed that this statutory violation was tantamount to a Fourth Amendment violation and that the court should therefore suppress the evidence.

The Government responded that the warrantless arrest complied with the statute, asserting that (1) there was probable cause to believe Abdi had violated immigration law, namely, those laws set forth in 8 U.S.C. § 1182(a)(3)(B)(iv); and (2) Abdi was an escape risk. Accordingly, the Government argued, there was no Fourth Amendment violation. In the alternative, the Government argued that even assuming a statutory violation, suppression would be unwarranted because, under Fourth Amendment jurisprudence, the illegal arrest did not taint the evidence at issue. Thus, the Government apparently assumed, like Abdi, that a statutory violation would amount to a Fourth Amendment violation.

Having considered both parties' arguments regarding the validity of the arrest under the statute, the district court concluded the that the Government violated the statute. Although the court concluded that the Government met the statute's first requirement (probable cause to believe Abdi had violated immigration law), it held that the Government failed to meet the second requirement (probable cause to believe Abdi was an escape risk). Recognizing that the Government presented no other basis on which to find the arrest lawful, the district court then addressed whether suppression was warranted.

On the suppression issue, the Government argued that the district court's determination that the arrest violated the statute did not necessarily justify suppressing the evidence in the circumstances presented in this case. In support, the Government argued that evidence obtained in violation of the Fourth Amendment is not always suppressed. The Government, however, did not argue that a statutory violation alone is — as a matter of law — an insufficient basis on which the court could invoke the exclusionary rule and suppress the evidence. The district court disagreed with the Government's argument, concluding that the Fourth Amendment jurisprudence the Government invoked actually militated in favor of excluding the evidence. The court therefore excluded the evidence, and the Government appealed to this Court.

### B.     The Government's Appeal

In its opening brief to this Court, the Government introduced a new argument: Abdi's warrantless arrest satisfied the Fourth Amendment because, according to the Government, no warrant is needed to arrest someone in a public place when there is probable cause to arrest that person. (*See* Appellant Br. at 21-24.) Noting that the district court concluded "that ICE agents had probable cause to execute an administrative arrest" and that Abdi was arrested "as he was leaving his apartment," the Government asserted that the arrest did not violate Abdi's Fourth Amendment rights and that suppression was therefore unwarranted. (*Id.* at 23-24.)[1]

Abdi responded by explaining that the Fourth Amendment does not permit a warrantless public arrest simply when there is probable cause for an immigration violation; rather, a warrantless public arrest would be permissible only if the Government had probable cause to believe Abdi committed a *felony*. (Appellee Br. at 4.) The Government, however, had never asserted probable cause regarding any felony. Abdi noted this point, explaining he was not arrested under "the common law of criminal arrest."

Responding to Abdi's point that a warrantless criminal arrest requires not just generic "probable cause" regarding any sort of violation, but probable cause regarding a *felony*, the Government, for the first time, asserted such probable cause existed: "[E]ven if, as Abdi now claims, a warrantless arrest requires probable cause that the subject committed a felony, the officers who arrested him possessed an abundant basis for probable cause that such a violation was in progress." (Appellant Reply Br. at 7.) "In particular," the Government argued, "the violations of the immigration law for which there is probable cause to detain Abdi included planning, inciting and soliciting terrorist activity, in violation of 8 U.S.C. § 1182(a)(3)(B)(iv), [and] virtually the same conduct is embraced by 18 U.S.C. § 2339B, which prohibits, *inter alia*, attempting or conspiring to provide material support to a foreign terrorist organization, including the provision of weapons and personnel." (*Id.*) This statement is the first instance in this case that the Government has argued it had probable cause to believe Abdi committed a felony, and it is the first time the Government specified what felony in particular (a violation of 18 U.S.C. § 2339B). The majority relies solely on these arguments to decide this case.

## II. WAIVER

It is fundamental, and firmly established by Supreme Court precedent, that appellate courts generally are not to consider an issue brought for the first time on appeal. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 n.3 (1999) ("Because [petitioner's] argument was neither raised nor considered below, we decline to consider it."); *Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249, 253-54 (1999) (declining to affirm lower court's decision based on arguments that were neither developed before nor considered by the lower court); *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 775 n.9 (1994) ("The [standing] issue was not raised below, so we do not address it."); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 38 (1989) ("We decline to address [the argument that the petitioner had no right to a jury trial under the Seventh Amendment] because respondent failed to raise it below."); *Heckler v. Campbell*, 461 U.S. 458, 469 n.12 (1983) (declining to consider an argument not presented to the lower courts).

Logically, this principle is applied to bar both the government and a defendant from raising Fourth Amendment arguments for the first time on appeal. *See United States v. Alvarez-Sanchez*, 511 U.S. 350, 360 n.5 (1994) ("Finding no exceptional circumstances that would warrant reviewing

---

[1] The Government also argued for the first time that suppression is an improper remedy where there is only a statutory violation.

a claim that was waived below, we adhere to our general practice and decline to address respondent's Fourth Amendment argument."); *Giordenello v. United States*, 357 U.S. 480 (1958). Following Supreme Court precedent, our sister circuits have declined to consider Fourth Amendment arguments raised for the first time on appeal. *See United States v. Nee*, 261 F.3d 79, 86 (1st Cir. 2001) (holding that, by failing to raise it to the district court, the Government waived its argument that the subjective intent of the officers was irrelevant for establishing probable cause); *United States v. 22249 Dolorosa Street*, 167 F.3d 509, 512 (9th Cir. 1999) (holding that the government waived its argument that the defendant did not have standing to challenge a search when it failed to raise that argument to the district court); *United States v. Gonzales*, 79 F.3d 413, 419 (5th Cir. 1996) (holding that the government waived its standing argument when it was put on notice that the defendant would claim a privacy interest).

The Supreme Court's decision in *Giordenello* is on all fours with the case at bar. There, the petitioner challenged the validity of the warrant issued for his arrest, arguing that the complaint underlying the warrant was defective. 357 U.S. at 484. In the lower courts, the government defended the legality of the petitioner's arrest "by relying entirely on the validity of the warrant." *Id.* at 487. On appeal, however, the government raised a new argument to validate the arrest regardless of whether the warrant was valid, namely, that applicable law "permits the arrest without a warrant upon probable cause that the person arrested has committed a felony." *Id.* The Court held that the government waived this argument: "We do not think that these belated contentions are open to the Government in this Court and accordingly we have no occasion to consider their soundness." *Id.* at 488. "To permit the Government to inject its new theory into the case at this stage," the Court continued, "would unfairly deprive petitioner of an adequate opportunity to respond." *Id.* The Court reached this conclusion because in the district court the petitioner, "being entitled to assume that the warrant constituted the only purported justification for the arrest, had no reason to cross-examine [a Government witness] or to adduce evidence of his own to rebut the contentions that the Government makes here for the first time." *Id.* Moreover, there was no basis to send the case back to the district court for a hearing on the facts underlying the government's new argument, because "[t]he facts on which the Government now relies to uphold the arrest were fully known to it at the time of trial, and there are no special circumstances suggesting such an exceptional course." *Id.* *See also Steagald v. United States*, 451 U.S. 204 (1981) (government argued in district court that exigent circumstances and consent justified warrantless search of residence, but additional argument on appeal that petitioner had no expectation of privacy in residence was waived).

Under *Giordenello* and its progeny, the Government has waived its new justification for Abdi's warrantless arrest. Just as in *Giordenello*, in the district court the Government defended the arrest entirely on one basis (the statute) and then on appeal, for the first time, argued the arrest was justified because there was probable cause to believe the defendant had committed a felony. *See Giordenello*, 357 U.S. at 487. Indeed, the facts warranting waiver here are even stronger than in *Giordenello* because not only did the Government here fail in the district court to make its argument that this arrest could be seen as a typical criminal arrest for which there was probable cause, it took pains to argue the contrary. For example, the Government stated that "*[u]nlike the warrant requirement in the usual criminal arrest*, in this case, the warrant would have offered no further constitutional protection to the defendant." (Appellant's Br. to District Ct. at 23 (emphasis added).) The Government further argued that Supreme Court precedent does not "require hyper-technical analysis of a warrantless arrest or proof of exigent circumstances where an arrest, like this one, is authorized by a federal immigration statute." (*Id.* at 22 (referring to *United States v. Watson*, 423 U.S. 411 (1976)). *See also id.* ("[T]he warrant requirement within the administrative immigration system is different from the usual criminal context."); *id.* at 21 (noting that the administrative warrant system "differs fundamentally from the criminal judicial system").) A finding of waiver is all the more appropriate in this situation, where the Government has changed its position. *See Steagald*, 451 U.S. 209 ("The Government . . . may lose its right to raise factual issues of this sort

before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation.").

The majority nonetheless asserts that *Giordenello* and *Steagald* do not support a finding of waiver here. (*See* Maj. Op. at 11-12 n.19.) It argues these cases are distinguishable on two grounds. I find neither persuasive.[2]

The majority first argues that these cases "were in a completely different procedural posture than the present case" because in those cases the petitioner had been tried and convicted, while this case involves an interlocutory appeal. This point is easily refuted: waiver is appropriately invoked on interlocutory appeals of suppression orders. *See, e.g., Nee*, 261 F.3d at 86 (government's alternative Fourth Amendment argument waived on interlocutory appeal). The majority further explains that because of this procedural posture, "unlike the situation in *Steagald* and *Giordenello*, it cannot be said that Abdi does not have an opportunity to respond to the underlying allegations and adduce his own evidence to rebut these contentions during trial and on appeal if he is convicted." This is true but irrelevant. Of course Abdi will have the opportunity to respond at trial to the "underlying allegations" of his guilt; but before that point is reached, the Government must meet its burden of showing Abdi's warrantless arrest did not violate the Fourth Amendment. The relevant question under *Steagald* and *Giordenello* is whether Abdi has had an opportunity to respond to *that* argument. He plainly has not.

The majority then argues *Steagald* and *Giordenello* are inapposite because, unlike those cases, the Government's new argument here is not materially different from that it presented to the district court and, accordingly, there are no additional questions of fact that would need to be developed by either party in the record below. I respectfully disagree with this contention. As an initial matter, the Government's new argument is plainly different from that it argued to the district court. As I point out above, its repeated representations to the district court that Abdi's arrest was *not* a criminal arrest contradict its new argument that the arrest can be justified as just that. (*See infra* p. 7. *See also* JA 492 (Government attorney at suppression hearing states as follows: "And one other thing I want to point out here: This was not a criminal arrest.").) As for the majority's claim that "the record in the present case is fully developed" to assess the Government's new argument, I find that contention flawed for two reasons.

First, while the majority adopts — without response from Abdi — the Government's new claim that the probable cause to believe Abdi violated the immigration statute (8 U.S.C. § 1182(a)(3)(B)(iv)) inexorably leads to the conclusion that there was also probable cause to believe he violated the criminal statute (18 U.S.C. § 2339B), I am not convinced that is the case. If this equivalence is so evident, I am puzzled by why the Government explained at oral argument that the reason it chose to have ICE execute a civil arrest under § 1182 instead of having the FBI arrest Abdi for a criminal violation (such as under § 2339B) was that, although it considered both options, "*there was concern as to whether there was a sufficient probable-cause basis for a criminal offense but*

---

[2] Before raising these grounds, the majority notes that "the issue of waiver was not presented by either party in their briefs or arguments before this court." (Maj. Op. at 12 n.19.) It should come as no surprise that the briefs do not mention waiver: the first time the Government asserted it had probable cause to arrest Abdi for a felony, and the first time it offered what that felony might be, was in its final brief to this Court. To be sure, the Government suggested in its opening brief that it had "probable cause," but that was under the mistaken belief that it needed probable cause for only an immigration violation, *not* a felony. Additionally, the majority is mistaken that waiver was never mentioned at oral argument. Counsel for Abdi stated, in response to questioning by this Court regarding waiver, that the Government had indeed waived this argument. (*See* July 17, 2006 Oral Arg. at 23rd min.)

*there was abundant probable-cause basis for an immigration violation."* (*See* July 17, 2006 Oral Arg. at 10th min. (emphasis added).)[3]

To be sure, one might argue that it does not matter what the Government's positions were along the way, so long as at the end of the day there was probable cause to believe Abdi violated 18 U.S.C. § 2339B. And, as the majority notes, "virtually" the same conduct is embraced by both statutes. (*See* Maj. Op. at 10.) In this way, the majority's adoption of the Government's belated argument has superficial appeal. But the very purpose of the waiver doctrine is to prevent us from reaching these sort of presumptive conclusions where one party has not had the chance to proffer evidence (or, in this case, even an argument to this Court) of why that conclusion might not follow. *See Giordenello*, 357 U.S. at 488 ("We do not think that these belated contentions are open to the Government in this Court and accordingly *we have no occasion to consider their soundness*.") (emphasis added). Perhaps the Government's concern stemmed from a realization that the immigration provision, § 1182, by providing three distinct violations — including, for example, that the person engaged in "terrorist activity by threatening use of a firearm," 8 U.S.C. § 1182(a)(3)(B)(i)(I) — provided an easier path to establish probable cause than § 2339B, which makes it a crime for a person to commit a very specific act, *i.e.*, "knowingly provide[] material support or resources to a foreign terrorist organization, or attempt[] or conspire[] to do so." 18 U.S.C. § 2339B. In short, the evidence underlying the probable-cause determination for the immigration arrest *may have* sufficed for probable cause under the criminal provision, but the Government, by not raising this argument until its reply brief in this Court, has not afforded Abdi his right to challenge that evidence in district court or even to argue that point to this Court.[4] Waiver is therefore appropriate.

Second, lost entirely in the Government's recent claim — and the majority's adoption of it — that Abdi's warrantless arrest is supported by probable cause that Abdi committed a felony is the age-old requirement that such an arrest must take place in public. Because the Government did not argue its public-criminal-arrest theory in the district court — and actually dissuaded the court from any such consideration — there was no development of evidence on this point. The majority, however, simply assumes that the arrest was in "public" and moves on to the probable-cause question. But all we know is that when Abdi was arrested, "[h]e was coming out" of his home. (JA 347.) Crucial to this "public" inquiry is where Abdi was when arrested — something for which we have almost no evidence, but that could have easily been developed in the court below.

Under *Payton v. New York*, 445 U.S. 573 (1980), a person may not be arrested at home without a warrant, regardless of the existence of probable cause, absent exigent circumstances. *United States v. Bradley*, 922 F.2d 1290, 1293 (6th Cir. 1991). In *United States v. Dunn*, 480 U.S. 294 (1987), the Supreme Court described the contours of the Fourth Amendment's protections in "curtilage" — the area immediately surrounding a home that "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 582 (6th Cir. 2005) (internal quotation marks omitted). The *Dunn* Court established four factors for determining whether an area is a home's curtilage: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. *Id.*

---

[3] This concern could, of course, explain why the Government took pains to make clear to the district court that this was *not* a criminal arrest.

[4] The majority points out that the district court stated that the Turgal Declaration "reeks of probable cause." (Maj. Op. at 10.) The district court, of course, was dealing with whether there was probable cause for only an immigration violation.

Because the Government chose not to raise its new argument in the district court, there was no development of the record related to whether Abdi was in the curtilage of his home when arrested. *Cf. United States v. Pace*, 898 F.2d 1218, 1229 n.2 (7th Cir. 1990) (court had no detail concerning condominiums' common-area garage "and the application to it of the four factors cited in *Dunn*, so it [was] not possible to decide for certain whether the garage . . . was curtilage"). To be clear, I recognize that the Government may have had little difficulty establishing that Abdi was outside the curtilage of his home.[5] But that is not the point. What matters is that, just as in *Giordenello* and *Steagald*, the Government's district-court arguments made evidence on the point irrelevant. *See Giordenello*, 357 U.S. at 488 (petitioner, "being entitled to assume that the warrant constituted the only purported justification for the arrest, had no reason to cross-examine [a Government witness] or to adduce evidence of his own to rebut the contentions that the Government makes here for the first time.").

The Government here chose in the district court — for whatever reasons — not to go down the path of probable cause for a warrantless criminal arrest in public; it cannot now be heard to avail itself of this theory. I would hold that this argument is waived.

### III. FOURTH AMENDMENT VIOLATION

Having concluded that the Government waived its argument that Abdi's warrantless arrest was constitutional as one in public and supported by probable cause that Abdi had committed a felony, I turn to the Government's preserved argument that the arrest satisfied the civil immigration statute, 8 U.S.C. § 1357(a)(2). On that point, I agree with the district court, for the reasons stated in its opinion, that there was not probable cause to believe Abdi was an escape risk and that the arrest therefore violated the statute.[6] Thus, because the Government violated the statute and waived its argument that it had probable cause to arrest Abdi for a felony, the Government has failed to meet its burden to show the warrantless arrest satisfied the Fourth Amendment.[7] I would therefore **AFFIRM** the order of the district court.

---

[5] Though, without a factual record, we certainly cannot assume this to be so. *Cf. Windgren*, 429 F.3d at 582 ("[T]he cleared area immediately surrounding the house constituted curtilage."); *Causey v. Doyle*, 442 F.3d 524, 528-29 (6th Cir. 2006) ("A fenced backyard such as the plaintiffs' is within the curtilage of the residence and therefore receives Fourth Amendment protection."); *Bradley*, 922 F.2d at 1293 (noting that warrantless arrests violated Tennessee law — which this Court later stated "paralleled the federal standard," *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) — when officers "enter[ed] private, occupied lands for the purpose of making an arrest.").

It is also debatable whether the Government could have established "exigent circumstances" justifying a warrantless entry into Abdi's home or curtilage. We have traditionally found the existence of exigent circumstances (1) when the officers were in hot pursuit of a fleeing suspect; (2) when the suspect represented an immediate threat to the arresting officers and public; or (3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals. *Causey*, 442 F.3d at 529 (citing *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992)).

[6] I reach this issue because, were I to decide — notwithstanding my conclusions regarding waiver — that the warrantless arrest *satisfied* the statute, I would presume the constitutionality of the statute and join the majority in holding that there was no Fourth Amendment violation.

[7] Given the majority's holding that there was no Fourth Amendment violation, I do not address whether the district court properly suppressed under *Brown v. Illinois*, 422 U.S. 590 (1975), the various statements and physical evidence at issue. I also note that, were the argument properly before me, I would agree with the majority's holding that suppression is not available as a remedy for violations of 8 U.S.C. § 1357(a)(2) that do not amount to Fourth Amendment violations. (*See* Maj. Op. at 8.)